IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY BRADLEY, | CV F F-11-0942 AWI DLB |
| Plaintiff, | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) |
| v. | |
| PATRICIA FLANNERY, CORREY SMITH and JANET SWEARINGEN, | |
| Defendants | Doc. # 25 |

This is a civil rights action pursuant to 28 U.S.C. § 1983 by plaintiff Jeffery Bradley ("Plaintiff") against individual defendants Patricia Flannery, Corey Smith and Janet Swearingen ("Defendants") based on the alleged violation of Plaintiff's rights against compelled self-incrimination under the Fifth Amendment. Following dismissal of Plaintiff's original complaint with leave to amend, Doc. # 19, Plaintiff filed an amended complaint on October 19, 2011. In the instant motion Defendants seek to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. Venue is proper in this court.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendants Flannery, Smith and Swearingen are each employees of the California Department of Developmental Services ("DDS"). Defendant Flannery was, at all times relevant to this action, the Deputy Director of DDS "in overall charge of supervising,

investigating, and disciplining peace officer employees of the Office of Protective Services, a part of the [DDS]." FAC, Doc. # 20 at ¶ 4. Defendant Smith was, at all time relevant to this action, employed by DDS as the Acting Chief of the Office of Protective Services. The FAC alleges that in that capacity, Smith "was the top law enforcement officer in charge of directing and supervising the day to day operation and management of the Office of Protective Services." Doc. # 20 at ¶ 5. Defendant Swearingen was, at all times pertinent to this action, employed by DDS as an "Internal Affairs Supervising Special Investigator II, responsible for supervising other [Internal Affairs] investigators." Doc. # 20 at ¶ 6. Plaintiff Bradley was employed by DDS as a peace officer commander of the Office of Protective Services.

Plaintiff's FAC alleges that in March of 2009, Flannery opened an Internal Affairs ("IA") investigation concerning the authorization of overtime by Plaintiff for an officer Scott Gardner. The FAC alleges Flannery assigned Defendant Swearingen to lead the investigation, and Smith was responsible to represent the Office of Protective Services during the IA investigation. As part of the investigation, Plaintiff alleges he was required, upon threat of adverse employment action, to produce the "work product of investigations which had generated the overtime." Plaintiff complied with the production demand and made verbal representations to Flannery "concerning authenticity and extent of the production." Doc. # 20 at ¶ 9. The FAC alleges "[e]ach [D]efendant knowingly and intentionally authorized Defendant Swearingen to turn over to the Porterville Police Department all documents produced under compulsion by [P]laintiff and Gardner that as described above, together with the documentary foundation provided by Plaintiff and Gardner that was protected by the Fifth and Fourteenth Amendments as set forth above." Doc. # 20 at ¶ 10. Plaintiff alleges that the evidence was produced to a Lt. Lewis of the Office of Protective Services at the Porterville Police Station and constituted compelled self-incriminatory evidence produced in violation of Plaintiff's rights under the Fifth Amendment. Plaintiff also

2

alleges that Defendants Flannery and Swearingen "decided to testify and identify before a grand jury the documents produced under compulsion by [P]laintiff." Doc. # 20 at ¶ 12. The FAC also alleges Defendants Flannery and Smith allowed Lt. Lewis to "opine before the grand jury against Plaintff as to the sufficiency of the production to justify the overtime authorized by [P]laintiff." Doc. # 20 at ¶ 13.

The grand jury returned an indictment against Plaintiff leading to his arrest in February 2010 and requiring Plaintiff to Post bond. The cost of the bond Plaintiff was $4,000 for a one-year term. On or about February 14, 2011, the superior court found the evidence relied upon in the indictment was produced in violation of Plaintiff's Fifth Amendment rights and dismissed the indictment against Plaintiff. The gist of Plaintiff's complaint is that Defendants knew the evidence they provided to the Porterville Police Department and to the grand jury was compelled and therefore "immunized" under the Fifth Amendment. Plaintiff contends that the acts by Defendants were in violation of Plaintiff's rights against compelled self-incrimination under the Fifth Amendment.

Plaintiff's original complaint was filed on June 9, 2011. A motion by Defendant to dismiss was granted by the court on October 5, 2011, with leave to amend. Plaintiff's FAC was filed on October 19, 2011. The instant motion to dismiss was filed by Defendants on November 2, 2011. Plaintiff's opposition was filed on November 11, 2011, and Defendants' reply was filed on December 2, 2011. Oral argument on Defendants' motion to dismiss was vacated and the matter was taken under submission as of December 12, 2011.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief

3

above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

It its Memorandum Opinion and Order granting Defendants' motion to dismiss Plaintiff's original complaint (hereinafter the "October 5 Order") the court briefly set forth the elements of a claim under the Fifth Amendment as follows:

> "[T]he Fifth Amendment privilege against compelled self-incrimination protects grand jury witnesses from being forced to give testimony which may later be used to convict them in a criminal proceeding." Lefkowitz v. Cunningham, 431 U.S. 801, 804-805 (1977). A claim for violation of the Fifth Amendment has two elements. First the state must compel "testimony

4

by threatening to inflict potent sanctions unless the constitutional privilege [against self-incrimination] is surrendered." Id. at 805.  Second, the compelled, un-immunized testimony must be used against the declarant in a criminal case.  See Crowe v. County of San Diego, 608 F.3d 406, 427 (9th Cir. 2010).  "A coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." Soot v. City of Everett, 582 F.3d 910, 925 (9th Cir. 2009).

Doc. #19 at 6:17 - 7:1.

"It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects and individual from compelled production of his *personal* papers and effects as well as compelled oral testimony." Bellis v. United States, 417 U.S. 85, 87 (1974) (italics added).  The Fifth Amendment privilege against compulsory self-incrimination is personal in nature.  Id. at 90; United States v. Lu, 248 Fed.Appx. 806, 2007 WL 2753030 (C.A.9 (Ariz.) (2007)) at **1.  A "long line of cases has established that an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." Bellis, 417 U.S. at 88.  "Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, the [Supreme Court in United States v. White, 322 U.S. 694 (1944)] found that it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege." Id.

The well recognized and established policy consideration behind the understanding that the Fifth Amendment privilege against self incrimination is personal in nature was expressed in United States v. White, 322 U.S. 694 (1944):

> The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal ands state governments to regulate those activities be correspondingly effective.  The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization.  Were the cloak of the [Fifth Amendment] privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible.  The framers of the constitutional guarantee against compulsory

5

> self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations.

Id. at 700.

While there may, in some cases, arise legitimate concerns regarding either the personal nature of certain specific documents or the artificial nature of a particular organization, the court cannot see any basis for such argument in this case. There is no question that both DDS and the Office of Protective Services are "artificial organizations" within the meaning of Bellis; that is, they each have a distinct legal existence separate and apart from their members and employees. See Bellis, 417 U.S. at 92-93 (describing characteristics of independent organization). The court also concludes that "work product" is, by definition, not personal in nature in that it reflects the effort of the employee to carry out the business of the organization, not the employee's own business.

Plaintiff's FAC gives short shrift to the actual nature of the "work product" and appears to concentrate on the allegation it was produced under compulsion. The court need not reach the question of whether the production of the documents was compelled if the documents provided are not *personal* and therefore not privileged within the meaning of the Fifth Amendment. Plaintiff gives no explanation as to why the "work product" should be considered personal in nature other than the allegation that it was produced pursuant to an internal affairs investigation and was thereafter produced to the Porterville Police and to the grand jury. Plaintiff's reference to the "work product" as "privileged" or "confidential" is without explanation so far as the court can discern. The only basis for such a claim that the court knows of is provided by California Penal Code § 832.7. Section 832.7 designates as "confidential" peace officer personnel records and information pertaining to internal affairs investigations. However two considerations prevent Plaintiff from claiming that the "work product" he produced is personal to him within the meaning of the Fifth Amendment. First, there is nothing to indicate that confidentiality as provided by section 832.7 has a

6

constitutional dimension given that it arises out of a state statute.  Second, such confidentiality as is provided by section 832.7 is not applicable "to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney Generals's office."  Id.

Plaintiff's claim that he suffered a Fifth Amendment violation because he was compelled to produce incriminating "work product" fails because the "work product" does not constitute *personal* testimony, whether or not Plaintiff was the declarant.  Plaintiff's contention that he suffered a Fifth Amendment violation to the extent he was compelled to produce testimony as to the authenticity, identity and extent of the production fails for much the same reason.  Plaintiff's testimony, assuming for the sake of argument that it was compelled, did not concern a matter that was or is personal to him.  His statements, to the extent they were testimonial, were delivered as an officer of an "artificial organization" not as an individual.  The information that was allegedly compelled concerned the business of the organization and not Plaintiff's personal business.  Pursuant to Bellis, Plaintiff may not wrap the cloak of privilege around the official conduct of the business or officers of DWS or of the Office of Protective Services.

Having the benefit of clarification of the legal and factual basis of Plaintiff's claim of violation of his rights under the Fifth Amendment, the court can now determine that, under the facts pled by Plaintiff in his FAC, Plaintiff suffered no violation of those rights.  Plaintiff is therefore not entitled to relief pursuant to 28 U.S.C. § 1983.  Given that the information that was allegedly produced under compulsion by Plaintiff was neither personal nor privileged under any law of which the court is aware, the court concludes that the complaint cannot be cured by further amendment.  The dismissal of Plaintiff's FAC will therefore be without leave to amend.

THEREFORE, for the reasons discussed above, Defendants' motion to dismiss Plaintiff's FAC is therefore GRANTED as to all Defendants and all claims.  Plaintiff's FAC is hereby DISMISSED in its entirety with prejudice.  The Clerk of the Court shall CLOSE the CASE.

IT IS SO ORDERED.

Dated:   April 3, 2012                                  _____
                                                        CHIEF UNITED STATES DISTRICT JUDGE